UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SHERI MARTINEZ (FIFIELD-MAAHS),<br><br>             Plaintiff,<br><br>     v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,[1]<br><br>             Defendant. | Case No. C12-1399-RAJ-BAT<br><br>**REPORT AND RECOMMENDATION** |

Sheri Ann Martinez[2] seeks review of the denial of her Supplemental Security Income and Disability Insurance Benefits applications.  She contends that the ALJ erred by (1) relying on a composite job at step four; (2) improperly assessing the opinions of physical therapist Jeremy Cornwell, DPT; and (3) discounting her credibility.  Dkt. 12.  As discussed below, the Court recommends **AFFIRMING** the Commissioner's decision and **DISMISSING** the case with prejudice.

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security.  Therefore, under Federal Rule of Civil Procedure 25(d)(1), Carolyn W. Colvin is substituted for Commissioner Michael J. Astrue as the Defendant in this suit.

[2] The Plaintiff has used a number of surnames at various points in her life.  *See, e.g.* Tr. 765.  The evidence of record refers to her as "Sheri Fifield-Maahs" or "Sheri Fifield Maahs," but she was apparently recently married and now uses the surname Martinez.  *See* Dkt. 12 at 8:4.  For ease of reference, this Report and Recommendation will refer to the Plaintiff as "Ms. Martinez."

REPORT AND RECOMMENDATION - 1

## FACTUAL AND PROCEDURAL HISTORY

Ms. Martinez is currently 54 years old, has a high school diploma and two years of college, and has worked as an oral surgery assistant, produce clerk, kitchen worker, deli clerk, restaurant manager, and retail assistant.[3]  On September 18, 2009, she applied for Supplemental Security Income ("SSI") alleging disability from April 5, 2007, and on September 28, 2009, she applied for Disability Income Benefits ("DIB"), alleging disability as of April 30, 2009.  Tr. 207-18.  Her SSI application was denied initially on October 2, 2008, and her DIB application was denied initially on December 2, 2009; both claims were denied upon reconsideration on February 2009.  Tr. 85-92, 98-112, 114-18.  The ALJ conducted a hearing on May 10, 2011, finding Ms. Martinez not disabled.  Tr. 16-34.  Because the Appeals Council denied Ms. Martinez's request for review, the ALJ's decision is the Commissioner's final decision.  Tr. 1-5.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[4] the ALJ found:

**Step one:**  Ms. Martinez had not engaged in substantial gainful activity since April 30, 2009.

**Step two:**  Ms. Martinez's status post left tibia/fibular fracture and cervical degenerative disc disease with possible radiculopathy are severe impairments.

**Step three:**  These impairments did not meet or equal the requirements of a listed impairment.[5]

**Residual Functional Capacity ("RFC"):**  Ms. Martinez could perform light work, with the following additional limitations: she can lift or carry up to 20 pounds occasionally and 10 pounds frequently; she can stand or walk for up to 4 hours in an 8-hour workday; she can sit without restriction; she can reach overhead with her upper right extremity occasionally; she can grasp and do fine fingering with her right upper extremity frequently; and she can engage in all postural movements frequently.  She has no other restrictions or limitations.

---

[3] Tr. 54-61, 207-18, 302.
[4] 20 C.F.R. §§ 404.1520, 416.920.
[5] 20 C.F.R. Part 404, Subpart P, Appendix 1.

REPORT AND RECOMMENDATION - 2

> **Step four:**  Ms. Martinez can perform her past work as an admitting clerk.  This job does not require the performance of work-related activities precluded by her RFC, and therefore she is not disabled.

Tr. 16-26.

## DISCUSSION

### A.   The ALJ Did Not Err at Step Four

At step four, the ALJ found Ms. Martinez capable of performing her past work as an admissions clerk, as that job is generally performed.  Tr. 26.  Ms. Martinez argues that the ALJ erred in characterizing her past work as an admissions clerk position, asserting that it was instead a composite job involving the work of an admissions clerk *and* a surgical technician.  Though the Commissioner contends that Ms. Martinez's hearing testimony suggests that she first worked as a surgical technician for a number of years and then transitioned to an admissions clerk position in the front office for two or three years in the same orthodontics office, Ms. Martinez asserts that her testimony could imply that she alternated between the two jobs within each day and thus the job should have been considered a composite job.

A review of the record reveals that the Commissioner's interpretation of the evidence is reasonable.  The record consistently describes Ms. Martinez's work at the orthodontics office as one job, spanning from 1992-2001.  She referred to the job title as either "oral surgery tech" or "oral surgery assistant," but she also described that her work there included front-desk coverage. *See* Tr. 256, 263-64, 307, 326-27.  She clarified at the administrative hearing that in this job she went from "the back to the front," meaning "[f]rom surgery to the front office."  Tr. 73.  She also testified that she performed the admissions clerk duties for "two or three years," and that those duties were similar to that of a receptionist (involving answering the phone and scheduling), and that she sat most of the time that she was an admissions clerk (though she could stand at will, so

REPORT AND RECOMMENDATION - 3

long as she stayed close to the phone). Tr. 74.[6]

There is no evidence that Ms. Martinez worked as both a surgery technician and as an admissions clerk during a single workday. Instead, the evidence shows that she worked as a surgical technician and as an admissions clerk in the same orthodontics practice; she worked at the practice from 1980-2001, but as an admissions clerk for only two or three of those years. Tr. 73-74. It was reasonable to infer from the record that Ms. Martinez switched her duties from surgical technician to admissions clerk at some point and did not perform both jobs during the same time period. Because the Commissioner's interpretation of the evidence is reasonable, it should not be disturbed. *See Batson v. Comm'r of Social Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004) ("When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion."). Accordingly, because the ALJ reasonably interpreted Ms. Martinez's work history to include a non-composite admissions clerk job, Ms. Martinez has failed to establish a step-four error.

**B.     The ALJ Did Not Err in Assessing the Opinion of Jeremy Cornwall, DPT**

Jeremy Cornwall, DPT, provided physical therapy services to Ms. Martinez and provided a number of opinions about her functional limitations. In October 2010, he opined that Ms. Martinez could perform sedentary work. Tr. 828. He revised his opinion in April 2011, and indicated at that time that Ms. Martinez could work only 2-4 hours per day. Tr. 902. He further noted in April 2011 that Ms. Martinez's "main functional limitation will be related to challenging balance environments with obstacle hazards and any significant lifting tasks." Tr.

---

[6] This testimony is more specific than the fill-in-the-blank answers that Ms. Martinez provided, wherein she attempted to summarize the requirements of both of her jobs at the orthodontics practice without differentiating between the two. Tr. 256, 263-64, 307, 326-27. At the hearing, Ms. Martinez was specifically asked about her job duties as an admissions clerk, and she had the opportunity to clarify the length of time she did that job and the duties and sitting requirements associated with it. Tr. 73-74.

REPORT AND RECOMMENDATION - 4

903. The record also contains Mr. Cornwall's physical therapy notes, dating between December 2010-March 2011. Tr. 785, 877-97.

The ALJ assigned "little weight" to Mr. Cornwall's opinions, in light of (1) his status as an "other" source,[7] (2) Ms. Martinez's ability to work multiple jobs since her original April 2007 injury, and (3) the inconsistency between the improvement documented in treatment notes and Mr. Cornwall's opinions indicating more restriction over time. Tr. 25. Ms. Martinez argues that in rejecting Mr. Cornwall's opinions as inconsistent with Ms. Martinez's work history and with her improvement over time, the ALJ overlooked the evidence showing that Ms. Martinez's work at Home Depot in spring 2010 caused her symptoms to worsen.

Ms. Martinez's argument is not supported by the record, in that Mr. Cornwall's treatment notes do not corroborate his inconsistent opinions. Mr. Cornwall's earliest treatment notes, from December 2010, indicate that physical therapy helped improve Ms. Martinez's "pain, stiffness, weakness, daily function at home, function at work and independence in self-management of conditions." Tr. 877. That same language was used in treatment notes through March 2011, and treatment notes also included other indications of improvement. Tr. 878-900. These notes were all entered after Ms. Martinez's work at Home Depot had ended, and do not corroborate her argument that her symptoms worsened between the date of Mr. Cornwall's first assessment and his second assessment. The ALJ thus provided at least one germane basis to discount Mr. Cornwall's opinions, when he noted that they were inexplicably inconsistent with each other.

The ALJ also indicated that Mr. Cornwall's opinions were undermined by Ms. Martinez's ability to work multiple non-sedentary jobs since the time of her April 2007 injury, apparently

---

[7] The parties agree that the ALJ correctly categorized Mr. Cornwall as an "other" source, and neither party contends that Mr. Cornwall's status as such is an independent reason to discount his opinions. Ms. Martinez and the Commissioner agree that Social Security Ruling 06-03p requires an ALJ to consider the opinions of "other" sources. *See* 2006 WL 2329939 (Aug. 9, 2006).

REPORT AND RECOMMENDATION - 5

without encountering the absenteeism predicted by Mr. Cornwall.  Tr. 25; Tr. 902 (Mr. Cornwall predicting that Ms. Martinez's impairments would likely cause her to miss about three days of work per month).  Ms. Martinez correctly notes that Mr. Cornwall's opinions were rendered after she left her most recent job at Home Depot, and suggests that because her condition worsened after leaving that job, Mr. Cornwall's opinions do not directly contradict her work history.  Dkt. 14 at 5-6.  Ms. Martinez's point may be well taken — but even if the ALJ incorrectly viewed Mr. Cornwall's opinions through a retroactive lens to find them inconsistent with Ms. Martinez's work history, the ALJ provided another germane reason to discount Mr. Cornwall's evidence.  The ALJ's assessment of Mr. Cornwall's evidence was therefore legally sufficient.  *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) ("While an ALJ must take into account lay witness testimony about a claimant's symptoms, the ALJ may discount that testimony by providing 'reasons that are germane to each witness.'" (quoting *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993))).

C.     **The ALJ Did Not Err in Discounting Ms. Martinez's Credibility**

The ALJ provided a number of reasons to discount Ms. Martinez's credibility.  Tr. 23-24.  First, though Ms. Martinez claimed to have been sober since July 2009, the ALJ identified evidence indicating that she relapsed in August 2009.[8]  Tr. 23.  Ms. Martinez contends that reporting a sobriety date just a couple of weeks off from the accurate date is not a clear and convincing reason to discount her credibility, and the Court agrees.  A single error regarding a sobriety date does not indicate the type of equivocation or misrepresentation of sobriety that

---

[8] The ALJ asserted in her decision that Ms. Martinez's most recent relapse occurred in October 2009, even though the evidence she cited was dated August 2009.  *See* Tr. 842.  Though the ALJ was mistaken as to the date of the relapse, it did nonetheless occur after the July 2009 date that Ms. Martinez explicitly provided — and defended upon questioning — as her sobriety date.  *See* Tr. 62-63.

REPORT AND RECOMMENDATION - 6

reflects poorly on a claimant's credibility.  *See Robbins v. Social Sec. Admin.*, 466 F.3d 880, 884 (9th Cir. 2006).

The ALJ did provide, however, other clear and convincing reasons to discount Ms. Martinez's credibility, which she characterized as "more troubling" than the inconsistency regarding Ms. Martinez's sobriety date.  Tr. 23.  Specifically, the ALJ pointed to inconsistencies in Ms. Martinez's reporting of her capabilities to walk, lift, and stand, and inconsistencies between those allegations and her work history, including her ability to work in multiple jobs between 2008 and 2010.  *Id.*  The ALJ also summarized Ms. Martinez's medical records, interpreting them to show that her pain was "not significantly debilitating" and that there is no medical evidence of record to corroborate her contention that she had been told to entirely stop working for a year after her bolt-removal surgery.  Tr. 23-24.

Though Ms. Martinez contends that none of the evidence cited by the ALJ is actually inconsistent with her allegations or with her work history, the Court disagrees.  Though it may be true that Ms. Martinez has not worked at "substantial gainful activity" levels since her original 2007 injury, her ability to work in multiple non-sedentary jobs in 2008, 2009, and 2010 — whether part-time or full-time — undermines her contemporaneous statements that she could lift no more than 10-20 pounds and stand/walk for only two or three hours at a time.  *See* Tr. 245 (July 2008 description of abilities), 255 (August 2008 description of abilities), 304 (describing the requirements of a job she performed November 2008-April 2009), 305 (describing the requirements of a job she performed December 2007-March 2008), 325 (September 2009 description of abilities).

Moreover, by September 2010, Ms. Martinez's treating physician Derek Rains, M.D., opined that she had no "remaining significant disabilities or limitations in work" (Tr. 916); this

REPORT AND RECOMMENDATION - 7

opinion undermines her testimony that her limitations persist — specifically including the same limitations treated by Dr. Rains — to preclude work activities. *See, e.g.*, Tr. 48-54. The inconsistencies between Ms. Martinez's allegations, her activities/work history and the medical evidence of record constitute a clear and convincing reason to discount the credibility of her subjective testimony. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Carmickle v. Comm'r of Social Sec. Admin.*, 533 F.3d 1155 (9th Cir. 2008). The ALJ's reliance on a contradiction in Ms. Martinez's reporting of her sobriety date was improper, but because the remaining clear and convincing reasons are supported by substantial evidence, the overall credibility determination should be upheld. *See Carmickle*, 533 F.3d at 1163 (holding that the inclusion of an improper reason among other proper reasons to discount a claimant's credibility does not "'negate the validity'" of the ALJ's credibility determination (quoting *Batson*, 359 F.3d at 1197).

## CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's decision should be **AFFIRMED** and recommends the case be **DISMISSED** with prejudice.

A proposed order accompanies this Report and Recommendation. Objections, if any, to this Report and Recommendation must be filed and served no later than **March 28, 2013.** If no objections are filed, the matter will be ready for the Court's consideration on **March 29, 2013**. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. Objections and responses shall not exceed twelve pages. The

///

///

1  failure to timely object may affect the right to appeal.

2    DATED this 14th day of March, 2013.

                _____
                BRIAN A. TSUCHIDA
                United States Magistrate Judge

REPORT AND RECOMMENDATION - 9